[No. G010047. Fourth Dist., Div. Three. May 15, 1991.]

In re ALLISON H., a Minor.
FRIEDHELM D., Plaintiff and Respondent, v.
JOHN H., Defendant and Appellant.

**COUNSEL**

John L. Dodd and Karen J. Dodd for Defendant and Appellant.

Van Deusen, Youmans & Walmsley and Ted. R. Youmans for Plaintiff and Respondent.

Harold LaFlamme and Duane T. Neary, under appointments by the Court of Appeal, for Minor.

**OPINION**

**CROSBY, Acting P. J.**—Under the guise of a Civil Code section 224 proceeding to dispense with a natural father's consent for a stepparent adoption, the superior court essentially terminated the father's parental rights on the basis of abandonment (Civ. Code, § 232, subd. (a)(1)), although a cause of action under the latter section had been dismissed without prejudice. We reverse.

I

Allison H. was born in August 1979. Her parents, who had lived together for several years before her birth, separated when she was one year old. Her mother, Charlene P., sued in 1981 to establish a parent/child relationship between the minor and the father, John H. The father did not contest paternity, and the court awarded the couple joint legal custody with physical custody to alternate every three months. No child support was ordered.

Charlene married Friedhelm D. in 1981. The couple, her two children from a previous marriage, and baby Allison moved first to West Germany and then to South Carolina, where they currently reside. Years elapsed without communication between father and daughter.

In early 1990, after being served with a petition filed in South Carolina to permit Friedhelm to adopt Allison, John sought a modification of custody and visitation. John also appeared in the South Carolina proceedings to contest that state's jurisdiction. The South Carolina court stayed all proceedings there and deferred to California's jurisdiction "based upon the concept that once a custody decree has been entered, the continuing jurisdiction of the decree state is exclusive." The court also observed, "The continuing jurisdiction of the State of California is not affected merely by the fact that South Carolina has become the minor Defendants [*sic*] 'Home State' as

defined in the Uniform Child Custody Jurisdiction Act." The South Carolina court expressed its willingness to proceed with the pending matters should this state decline to retain jurisdiction. The court did, however, stay the long-standing California visitation order.

The minor's mother and stepfather made a special appearance to challenge California's jurisdiction. The court rejected their position; and in an order issued April 17, 1990, the judge found the mother "has interfered with [the father's] custodial rights, violating the spirit of California Civil Code § 5150(e), . . . to 'deter abductions and other unilateral removals of children undertaken to obtain custody awards.' " The court also concluded, "It is in the best interests of the child that she have frequent and continuing contact with her father." The court did modify the nine-year-old custody order to give primary physical custody to the mother, but retained joint legal custody. The father could visit Allison one weekend per month in South Carolina and would have extended periods during summer and holiday vacations. The mother was ordered to pay the father's attorneys fees for that proceeding. We will reiterate the point anon, but it is important to note at this juncture that this order was not appealed and was final when this case was heard.

In the meantime, Friedhelm petitioned in this state to declare the minor free from her father's parental custody and control on the basis of abandonment (Civ. Code, § 232, subd. (a)(1)) and to dispense with his consent to a stepparent adoption (Civ. Code, § 224). The verified petition alleged John was Allison's presumed father and conceded that joint legal custody had been awarded to both natural parents.

Counsel was appointed for Allison, and the cause proceeded to a hearing before a different judge. At the beginning of the second day, Friedhelm's attorney announced an intention to abandon the claim under Civil Code section 232, subdivision (a)(1) and to proceed solely under Civil Code section 224. Nevertheless, the testimony presented consistently focused on whether John had intentionally abandoned Allison.

The court heard from John, Charlene, Friedhelm, John's mother, and John's psychologist. The latter, Charles Joseph Pine, Ph.D., has treated John for years for posttraumatic stress disorder, a condition related to his two tours of combat duty in Vietnam. John blamed interference by Charlene and Friedhelm for the years during which he had no contact with his child; they asserted he simply failed to contact them. There was no question, however, that Charlene never made any attempt to comply with the shared physical custody order.

The court took judicial notice of the November 1981 order awarding joint legal and alternating physical custody and of the April 17, 1990 order. It will be recalled that, while the latter order modified the physical custody arrangement, the court also specifically found that the mother had interfered with the previous visitation schedule and the best interests of the child demanded a continuing relationship with her father.

The trial court determined none of the testimony by the psychologist provided a factual or legal defense to John's failure to communicate with Allison. The court did recognize that no child support was owed and Charlene had never asked John to contribute to his daughter's support or education.

In an oral statement of decision, the judge lectured the parents at length, noting each had exercised "bad judgment" at times and "both [were] insane and with a declared state of war. Sounds like Iraq and Iran. And look what happened in Iraq and Iran. . . . They slaughtered their own people." The court specifically found, however, "There's no evidence that John is a bad dad, was a bad dad or would be a bad dad." The court then quixotically concluded "that the best interests of the child require the parental rights of the [father] to be terminated, and his consent not to be required to the adoption."

## II

A gross injustice occurred in this case on several fronts, and reversal is compelled. ■ As a matter of law, the court could not employ Civil Code section 224 to dispense with John's consent to a stepparent adoption. That section provides, "A child having a presumed father . . . cannot be adopted without the consent of its parents if living; however, *if one parent has been awarded custody by judicial decree, or has custody by agreement of the parents,* and the other parent for a period of one year willfully fails to communicate with and to pay for the care, support, and education of the child when able to do so, then *the parent having custody alone may consent to the adoption . . . ."* (Italics added.) Friedhelm conceded in the petition that John is Allison's presumed father and has always had joint legal and physical custody. The judgment was modified in unimportant ways in April 1990; but Allison's mother has never been awarded sole custody, either physical or legal, of her daughter. In short, Civil Code section 224 is simply not available to her as a vehicle to accomplish a stepparent adoption.

Neither the trial judge nor any of the lawyers appeared to recognize that Civil Code section 224, by its own terms, precluded the action taken below.

Instead, counsel for John and the minor argued in general terms that the evidence was insufficient to satisfy the statutory requisites of section 224. And it certainly was: With John indisputably sharing joint legal and physical custody, there was a complete failure of proof to justify the court's decision under section 224.

Nevertheless, because the utter inapplicability of the statute was not specifically raised in the briefs, we requested the parties to be prepared at oral argument to discuss it. (Gov. Code, § 68081.) They did; both sides submitted briefs on the issue as well.

Friedhelm has presented a specious argument to avoid the clear language of the statute, i.e., that it was somehow rendered obsolete and amended by implication with passage of the Family Law Act because joint custody awards are there preferred. Nonsense. Civil Code section 4600, subdivision (d) provides, "This section establishes neither a preference nor a presumption for or against joint legal custody, joint physical custody, or sole custody . . . ." Enacted in 1988, this subdivision was in place when the court reconsidered the matter in 1990 and retained joint legal and physical custody (and specifically found Charlene had interfered with John's custody rights).

After John's attorney concluded his rebuttal argument before this court, counsel for Friedhelm belatedly raised the question of waiver, contending that at this late date John could not challenge the court's decision to proceed under Civil Code section 224. In an abundance of caution, we gave the parties the opportunity to brief this tardy issue too. They have, and we are not persuaded by Friedhelm's position.

As already noted above, in the trial court and in their briefs here, counsel for John and the minor attacked the sufficiency of the evidence to dispense with the father's consent under Civil Code section 224. True, the challenge was launched in general terms and did not hone in on the determinative element; but it was raised nevertheless. The evidence was totally insufficient because it failed to show sole custody in Charlene. There was no waiver.

Moreover, questions of law may be raised for the first time on appeal. The facts concerning the elements of section 224 are undisputed, i.e., that John is the presumed father and at all times he had joint legal and physical custody. Friedhelm essentially attempted to use Civil Code section 224 to circumvent the applicable statutes for termination of parental rights, and John simply received ineffective assistance from his attorney. The court had no authority under Civil Code section 224 to find John's consent was unnecessary to effectuate the stepparent adoption, and his counsel should have said so. (See

*In re James S.* (1991) 227 Cal.App.3d 930 [278 Cal.Rptr. 295].) We will not find waiver under these circumstances.

### III

█ There is more. John has requested a ruling that Friedhelm cannot proceed with a renewed Civil Code section 232 proceeding to terminate his parental rights. (See Code Civ. Proc., § 43.) Friedhelm insists any decision we reach must be without prejudice to his bringing another termination proceeding in the superior court. Of course, Friedhelm can file a new Civil Code section 232 petition any time he wishes; but that is not the real concern at this point. The pertinent question is whether he is foreclosed from relitigating the same abandonment issue based on conduct predating April 1990. He is.

We harken to the findings of the April 1990 hearing. There, the court concluded Charlene actively interfered with John's custodial rights. Put another way, the court declined to find John was at fault for the lack of communication with his daughter. Further, the court found that continuing and frequent contact with her father was in Allison's best interest. Charlene never challenged the April findings or the order based upon them. That order is final and should have been accorded collateral estoppel effect in this proceeding. Parties are not entitled to seek out a judge who might be more sympathetic to their position and endlessly relitigate issues on the same set of facts.

But relitigate they did. Despite dropping the Civil Code section 232 allegations on the record, the case was tried by Friedhelm and the court as if termination of John's parental rights was the goal, a fact recognized and lamented by counsel for John and the minor.

The judgment, prepared by Friedhelm's attorney, begins with the telling words, "The matter of the Freedom Petition . . . came on for hearing." It goes on to recite, "WHEREAS, the court finds by clear and convincing evidence that the best interests of the child require the parental rights of the [father] be terminated, and his consent not be required to the adoption . . . ." This sounds suspiciously like a Civil Code section 232 termination of parental rights to us.

Our suspicions are confirmed by a careful perusal of the hearing transcript and the court's statement of decision, given orally from the bench. The

decision is unequivocally couched in terms of Civil Code section 232. For example, the court stated, "My decision is whether I can come to a conclusion [that] during a period of time he intended to abandon his daughter." When the judge was ostensibly discussing the willfulness aspect of Civil Code section 224, he observed, "Willful in this context does not mean anything more than intentional." He added, "But by clear and convincing evidence, between somewhere in '85 through to '89 there was an abandonment . . . . [¶] . . . [I]t's clear that there has been a year, actually three or four times a year, of no contact with the child with the intent to abandon."

But the court purported to make this ruling just months after another judge concluded, "the mother has seen fit to deny any contact with the father for nine years." Moreover, uncontroverted declarations and testimony by John and his mother in this proceeding established that Charlene and her husband have held Allison hostage in South Carolina and have done everything possible to thwart the development of a healthy parent/child relationship between John and his daughter. They have been openly hostile and uncooperative in his every effort to visit with Allison in South Carolina, even to the point of causing a court in that state to interfere with the California visitation order.

Consequently, Friedhelm's insistence that he should be able to renew a Civil Code section 232 proceeding and relitigate the legal ramifications of John's conduct over the past decade borders on the frivolous. We see no purpose for that given the April 1990 order and the facts adduced below, other than more harassment and legal fees. In fact, Friedhelm's counsel exhibits astonishing gall by bringing the present action after the previously rendered findings.

The delays and obstacles that have confronted John in his efforts to develop a relationship with Allison are inexcusable. Further resistance by Charlene, as the parent with primary physical custody, should be dealt with swiftly and decisively by the superior court.

The judgment is reversed in its entirety. Appellant is entitled to costs and may apply to the superior court for attorneys fees for prosecution of this appeal. As an aside, we note the South Carolina court (by order dated May 22, 1990, and modified on June 1, 1990) previously suspended the provisions of California's April 17, 1990, order for the father's visitation. We assume this opinion will remove any reservations currently held by the court of our sister state concerning visitation and that our superior court will act

promptly to facilitate the resumption of regular visitation between Allison and her father, as ordered on April 17, 1990, if requested.

Wallin, J., and Beacom, J.,* concurred.

A petition for a rehearing was denied June 10, 1991.

*Judge of the Orange Superior Court sitting under assignment by the Chairperson of the Judicial Council.